**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

SHANNON COPELAND, an individual,

PLAINTIFF,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF ADAMS,

DEFENDANTS.

**COMPLAINT**

Plaintiff, SHANNON COPELAND, by and through her undersigned counsel at the law offices of Bryan E. Kuhn, Counselor at Law, P.C., hereby submits her Complaint against Defendants, THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF ADAMS, alleging as follows:

**INTRODUCTION**

1. This is an employment discrimination and retaliation suit brought by a former employee of Defendant, who was discriminated against during her employment by her employer in violation of state and federal law. Plaintiff informed her supervisors that she was disabled and requested accommodations, including medical leave. After Plaintiff's protected disclosures, she was subjected to adverse treatment, written up, placed on unpaid suspensions, denied accommodations and terminated after eighteen (18) years of dedicated service.

1

2. Plaintiff asserts claims of discrimination and retaliation in violation of Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101, *et seq.,* ("ADA"), Section 504 of the Rehabilitation Act of 1973, as amended, ("Rehabilitation Act") and the Colorado Anti-Discrimination Act. Colo. Rev. Stat §24-34-401. *et seq.* ("CADA").

## PARTIES

3. Plaintiff, SHANNON COPELAND ("Plaintiff" or "Ms. Copeland"), is a citizen of Denver, Colorado, who presently resides at 4595 Davenport Way, Denver, Colorado 80239.

4. Defendant, THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF ADAMS ("Adams County") is a political subdivision of the State of Colorado, established pursuant to Article XIV, section 1 of the Colorado constitution. Pursuant to statute, the county shall be used as "The Board of County Commissioners of the County of Adams." *See*, Colo. Rev. Stat. § 30-11-105.

5. At all relevant times, Plaintiff was an "employee", as set forth 42 U.S.C. § 12111(4) of the ADA, the Rehabilitation Act and in Colo. Rev. Stat. § 24-34-401(2) of the CADA.

6. At all relevant times, Adams County was covered by the definitions of "employer" set forth in 42 U.S.C. § 12111(5) of the ADA, the Rehabilitation Act and in Colo. Rev. Stat. § 24-34-401(3) of the CADA.

7. Defendant receives financial assistance offered by the federal government from, including but not limited to, the United States Department of Health and Human Services

("HHS") and United States Department of Housing and Urban Development ("HUD"); therefore, its employees are protected by the Rehabilitation Act.[1]

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331 and 1343. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f) (1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e-5(f)(1) and (3); Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981(a); 29 U.S.C. § 626(c)(1); and 29 U.S.C. §2617(a); and Section 504 of the Rehabilitation Act.

9. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10. In addition, this Court has jurisdiction over the Defendant as the complained of unlawful employment practices took place in Colorado and the Defendant maintains substantial, ongoing business operation(s) in this state.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful were committed in the District of Colorado.

## FACTUAL ALLEGATIONS

12. In July 1999, Ms. Copeland was injured in a car accident which resulted in severe pain in her neck and muscle spasms down her entire back. Contemporaneously, Plaintiff was diagnosed with carpal tunnel syndrome.

---

[1] Since 1988, if any part of an entity receives federal funds, the entire entity is subject to the Rehabilitation Act. *See*, 29 U.S.C. § 794(b); *Tamberg v. Weld County Sheriff*, 787 F. Supp. 970, 974 (D. Colo. 1992).

13. Plaintiff was hired by Adams County Human Services Department ("Human Services") as a Social Services Caseworker III ("Caseworker") in Denver, Colorado on November 15, 1999.

14. Human Services is a department within Adams County and provides various services to the public such as Adoption, Children and Family Services, Community Support Services, Foster Care, and a Food Assistance Program.

15. Throughout her tenure, Ms. Copeland worked as a Caseworker on various teams including Ongoing, Adoptions, and Youth in Transition.[2]

16. Beginning in January 2005, Ms. Copeland worked on the Youth in Transition team, which specializes in assisting the adolescent population, ages twelve (12) to twenty-one (21), who have permanency goals which may include long-term foster care and emancipation, as well as the teen parent population and older adolescent youth with goals of adoption.

17. In the first seventeen (17) years of her tenure with Adams County, Plaintiff was disciplined very few times and received excellent performance reviews.[3]

18. On August 15, 2016, Plaintiff's former colleague, Ms. Andrea Bradford was promoted to Youth in Training Supervisor and became Ms. Copeland's manager.

19. Around this time, Ms. Copeland's health began to deteriorate. Plaintiff realized that the injuries from the car accident and a resurgence of mental health concerns were interfering with her ability to complete her job responsibilities in the same stellar manner.

---

[2] Ms. Copeland worker for the Ongoing team from November 1999 until January 2003; Adoptions from January 2003 until January 2005; and Youth in Transition from January 2005 until April 16, 2018.
[3] On September 15, 2006, Ms. Copeland was issued a written warning and PIP Plan. On December 1, 2006, the PIP was successfully completed with vast improvements noted. On July 25, 2008, Ms. Copeland was issued a written reprimand and on August 20, 2008, Ms. Copeland received an oral warning.

20. As a former co-worker, Ms. Bradford was aware of Ms. Copeland's challenges and medical condition(s).

21. Immediately after assuming the supervisory role, Ms. Bradford began targeting Ms. Copeland and issued Plaintiff a written warning for "insubordination" only eleven (11) days later, on August 26, 2016,[4] alleging a "lack of follow through," noting that Ms. Copeland was not communicating, not completing her projects in a timely manner, and falling behind on her work.

22. As punishment, Ms. Bradford rescinded Ms. Copeland's previously approved telecommuting days.

23. Plaintiff provided a rebuttal to the allegations on August 29, 2016, detailing her whereabouts on the dates in question and providing emails to substantiate that the "missing" tasks were actually completed.

24. Ms. Copeland asked that given her evidence presented in response, the written warning be considered null and void and her telework schedule be reinstated.

25. Ms. Bradford ignored Plaintiff's request and continued to micromanage her at every turn.

26. On April 24, 2017, Ms. Bradford met with Plaintiff and directed her to provide her with access to a calendar of her whereabouts, provide a weekly schedule, and provide an outline of what Plaintiff planned to accomplish every week.

27. Less than one (1) month later, on May 16, 2017, Ms. Bradford and Edie Winters (Permanency Manager) issued Ms. Copeland a written warning and three (3) day unpaid

---

[4] Prior to Ms. Bradford's written warning, Ms. Copeland had not received a disciplinary action in eight (8) years.

suspension for failure to timely enter notes, not providing her supervisor with access to her work calendar, and an ongoing lack of attention to timely submission of court reports.

28. Further, Ms. Winters escorted Ms. Copeland out of the building and loudly stated that she was "on suspension" within earshot of Plaintiff's colleagues.

29. The description of events provided by Ms. Bradford in the written warning were so inaccurate that Ms. Copeland refused to sign the same and instead submitted a response on May 23, 2017.

30. Therein, Plaintiff noted that she had two (2) kids in her caseload were in crisis, which took significant time away from her ability to complete the busy work required by Ms. Bradford. Plaintiff also stated that she was making an effort but was not being provided with any solutions or assistance to meet Ms. Bradford's heightened standards and that the suspension would only cause her to fall further behind in her work.

31. Adams County did not respond to Ms. Copeland's statement or request for help.

32. On August 15, 2017, Ms. Copeland was formally diagnosed with cervical spondylosis, degenerative disc, lumbar radiculopathy, and muscle spasms down her entire back.

33. Accordingly, Ms. Copeland requested accommodations due to her pain, difficulty getting around, difficulty typing, and inability to call or text while driving.

34. Plaintiff's doctor, Ozioma Gab-Ojukwu submitted a Certification of Health Care Provider for Employee's Serious Health Condition on September 19, 2017, noting that Ms. Copeland's condition was likely to last at least twelve (12) months, she would be unable to work at all during flare-ups (which could occur two (2) times per month) and that Plaintiff was referred to Neurology for further evaluation and treatment.

35. Ms. Copeland went on intermittent FMLA from August 15, 2017 to January 18, 2018, to address her medical issues and to attend necessary medical appointments.

36. On October 16, 2017, Ms. Copeland was again diagnosed with carpal tunnel.

37. Following Ms. Copeland's requests for medical leave and accommodations, Ms. Bradford's treatment worsened.

38. Despite Plaintiff's medical concerns, Ms. Bradford issued Ms. Copeland a written warning and four (4) day unpaid suspension on November 8, 2017, for arriving late to work and failing to follow instructions. Notably, the warning included discipline for date(s) when Ms. Copeland took FMLA leave hours or was experiencing difficulty with her medical condition(s).

39. Ms. Copeland again refused to sign the sham written warning.

40. On November 9, 2017, Ms. Copeland was diagnosed with spinal stenosis and myofascial pain syndrome.

41. Additionally, on November 16, 2017, Ms. Copeland was formally diagnosed with a learning disability (reading based) and anxiety disorder.

42. Ms. Copeland again requested accommodations in December 2017, but was ignored.

43. On January 3, 2018, while on annual leave, Ms. Copeland received a Notice of Pre-Disciplinary Conference for alleged continued performance issues in November and December 2017, which set a pre-disciplinary conference for January 10, 2018 and a disposition conference for January 17, 2018.

44. On January 5, 2018, Ms. Copeland's doctor informed her that her condition required surgery to prevent paralysis.

45. Ms. Copeland responded to the Notice of Pre-Disciplinary Conference on January 10, 2018, noting that she felt the continued discipline was "harassment" which was exacerbating her medical condition(s). Plaintiff requested to be reassigned to a new supervisor upon her return to work from leave.

46. Adams County again did not respond to Plaintiff's complaints about harassment from her supervisor or request for re-assignment.

47. Despite her worsening medical issues, Plaintiff was required to attend the Pre-Disciplinary Conference on January 10, 2018, wherein she restated her concerns about Mses. Bradford and Winters' conduct to Chris Kline (Human Services Director) and Amy Jones (Human Resources).

48. During the January 10th meeting, Ms. Copeland notified Mr. Kline of her intention to seek FMLA leave to complete the necessary surgery to prevent paralysis.

49. A week later, *the same day as the scheduled meeting*, Ms. Copeland was informed that the disposition meeting was postponed until her return from leave.

50. Plaintiff took continuous FMLA leave from January 19, 2018 to April 10, 2018.

51. On April 3, 2018, Ms. Copeland's doctor submitted a Notice of Intent to Return to Work and Reasonable Accommodations Request stating that Plaintiff needed to return to work on a part time basis for two (2) weeks, working no more than four (4) hours per day.

52. Plaintiff's medical provider also requested that Ms. Copeland be provided with an assistive computer program and a computer roller bag due to a lifting restriction of no more than ten (10) pounds.

53. On April 9, 2018, Adams County refused to grant Ms. Copeland's accommodation request to return to work on a part-time schedule, despite the fact that Plaintiff had seen numerous caseworkers return from leave on a part-time basis.

54. Instead, Adams County encouraged Ms. Copeland to sign and submit a personal leave request to increase her leave for an additional thirty (30) days.

55. Plaintiff expressed concern that her doctor's intent was for her to slowly return to work and additional leave would not meet those intentions.

56. In response, Adams County told Ms. Copeland to have her doctor give her tasks to simulate her job duties,

57. In spite of Adams County's refusal to provide accommodations, Plaintiff tried to return to work on April 10, 2018 without any accommodations in place.

58. On April 10, 2018, Adams County stated that Ms. Copeland would not be allowed to return to work, would be placed on unpaid administrative leave, and was not allowed to set foot on Adams County property until she appeared for the rescheduled disposition meeting, set for April 16, 2018.

59. Six (6) days after her attempted return from leave, on April 16, 2018, Ms. Copeland was terminated by Mr. Kline.

60. During the April 16, 2018, meeting Ms. Copeland was told that she was being terminated in part for disciplinary actions that took place over a decade ago and because she was furthering her education by going back to school, she "would be going into a different career anyways."

61. On April 20, 2018, Ms. Copeland appealed her termination though Adams County's internal procedures.

62. The termination decision was affirmed on May 17, 2018.

63. The allegations brought forth by Mses. Bradford and Winters are pretextual. Ms. Copeland was actually terminated due to her disabilities and in retaliation for reporting her supervisor's behavior.

64. Adams County's inaction and failure to accommodate Ms. Copeland's disabilities resulted in the County's manager impatient tirades, prevented Ms. Copeland from being acknowledged as a competent social worker, and prevents Plaintiff from reaching her full potential with Adams County.

65. Rather than addressing Ms. Copeland's assertions that she was being subjected to discrimination, Adams County failed to allow her to return from leave and terminated her.

66. Ms. Copeland did not receive a response from Adams County Human Resources to her August 29, 2016; May 23, 2017; January 7, 2018; January 10, 2018; or January 18, 2018 correspondence prior to her April 16, 2018 termination.

67. Plaintiff dual filed a Charge with the Equal Employment Opportunity Commission ("EEOC") and the Colorado Civil Rights Division ("CCRD"), assigned Charge No. 541-2018-03384 on September 18, 2018, regarding the conduct of Defendant.

68. On November 27, 2018, the EEOC transmitted a Notification & Acknowledgement of Dual-Filed Charge to the CCRD, stating that "pursuant to the work-sharing agreement," the Denver Field Office would investigate the Charge.

69. On March 20, 2019, the EEOC issued a Notice of Right to Sue ("NRTS") in connection with Charge of Discrimination No. 541-2018-03384.

## **FIRST CLAIM FOR RELIEF**
*(Violations of ADA – Failure to Accommodate, Disparate Treatment, and Retaliation)*

70. Plaintiff incorporates by reference paragraphs 1 through 69 as fully set forth herein.

71. The ADA Amendments Act of 2008 (ADAAA) applies to Ms. Copeland's ADA claims of failure to accommodate and disparate treatment, and retaliation because those actions took place in 2018. *See*, Pub. L. 110–325, § 8, 122 Stat. 3553 (Sep. 25, 2008), *codified at, e.g.*, 42 U.S.C. § 12101. Because of the date of the actions complained of, the greatly expanded definition of the ADA Amendments Act of 2008 applies to this case. Under the new law, "major life activity" and substantial limitation" are to be construed as broadly as possible.

72. Under the ADAAA, Plaintiff's disabilities must be assessed in their active state, without regard to mitigating measures like medical treatments or assistive aides. *See*, 42 U.S.C. § 12102(4)(D); 29 C.F.R. § 1630.2(j)(1)(vii); *see also*, 42 U.S.C. § 12102(4)(E)(i); 29 C.F.R. § 1630.2(j)(1)(vi).

73. With regard to impairments that do not fall into a "predictable assessment," "the condition, manner or duration" framework will often be relevant." The comparison will be to "most people" in the general population. *See* 29 C.F.R. §1630.2(j)(4)(i)-(ii).  When measured using the condition, manner or duration framework, Ms. Copeland has a qualifying disability.

74. Defendant knew of Ms. Copeland's qualifying disabilities of cervical spondylosis, degenerative disc, lumbar radiculopathy, spinal stenosis and myofascial pain syndrome, carpal tunnel, a reading-based learning disability and anxiety disorder.

11

75. Ms. Copeland's medical condition(s) substantially limit one or more of her major life activities, including, but not limited to, caring for oneself, performing manual tasks, walking, standing, sitting, reaching, lifting, learning, and reading.

76. Plaintiff was able to perform the essential functions of her position.

77. At all relevant times, Ms. Copeland was a qualified individual with known or perceived disabilities as defined by the ADA, as cervical spondylosis, degenerative disc, lumbar radiculopathy, spinal stenosis, myofascial pain syndrome, carpal tunnel, a reading-based learning disability and anxiety disorder, substantially limit Plaintiff's major life activities of caring for herself, performing manual tasks, walking, standing, sitting, reaching, lifting, learning, and reading.

78. Defendant subjected Plaintiff to less favorable terms and conditions of her employment and took adverse actions against her due to her disabilities as described in this Complaint, including: treating her with hostility; failing to begin the interactive process; failing to provide accommodations; suspending her without cause five (5) times in eighteen (18) months; issuing numerous written warnings; targeting her for behavior for which other employees were not punished and terminating her shortly after she filed her most recent accommodations request.

79. Plaintiff engaged in protected activity within the meaning of the ADA when she requested accommodations for her disability and reported her concerns about the treatment from her co-worker(s).

80. Adams County wrongfully terminated Ms. Copeland because of her disabilities and in retaliation for seeking accommodations.

81. Alternatively, during all relevant time periods, Defendant regarded Ms. Copeland as disabled.

82. Defendant's actions were engaged in intentionally and willfully, with malice or in reckless disregard for Ms. Copeland's federally protected rights.

83. As a result of Defendant's unlawful employment practices, Ms. Copeland has suffered economic and non-economic damages including, but not limited to, severe emotional distress, mental pain and suffering, inconvenience, and loss of income.

### SECOND CLAIM FOR RELIEF
*(Violations of the Rehabilitation Act –Discrimination and Retaliation)*

84. Plaintiff incorporates by reference paragraphs 1 through 83 as fully set forth herein.

85. At all relevant time periods, Plaintiff was a qualified individual with a disability within the meaning of the Rehabilitation Act.

86. Ms. Copeland was able to perform the essential function of her position.

87. Because of Ms. Copeland's physical and mental condition(s), Adams County regarded Ms. Copeland as having a record of disability. Plaintiff also has disabilities that substantially limit her major life activities.

88. Adams County discriminated against Ms. Copeland because of her disabilities, as described in this Complaint, including: treating her with hostility; failing to begin the interactive process; failing to provide accommodations; suspending her without cause five (5) times in eighteen (18) months; issuing numerous written warnings; targeting her for behavior for which other employees were not punished and terminating her shortly after she filed her most recent accommodations request.

89. Ms. Copeland engaged in protected activity within the meaning of the Rehabilitation Act when she requested a reasonable accommodation for her disabilities.

90. Ms. Copeland's managers engaged in a campaign of retaliation and took a series of materially adverse actions against Ms. Copeland in retaliation for her having engaged in such protected activity, including but not limited to subjecting her to increased scrutiny and criticism for her workplace performance and ultimately terminating her.

91. Adams County's actions were engaged in intentionally and willfully, with malice and in reckless disregard for Ms. Copeland's federally protected rights.

92. As a direct, proximate and foreseeable result of the Defendant's acts, omissions, and violations in this regard, Ms. Copeland suffered damages, including lost wages and benefits.

## THIRD CLAIM FOR RELIEF
*(Violations of the CADA, as amended –Disparate Treatment, Retaliation, Retaliation, and Wrongful Termination)*

93. Plaintiff incorporates by reference paragraphs 1 through 92 as fully set forth herein.

94. Plaintiff belongs to a protected class based on her disabilities.

95. Defendant, its employees, and agents unlawfully discriminated against Plaintiff based on her disabilities, as described in this Complaint, including: treating her with hostility, screaming at and surveilling her, writing her up, suspending her, failing to provide requested accommodations and terminating her.

96. Plaintiff demonstrated a pattern of opposition to the unlawful retaliation, and discrimination that she experienced based upon her disabilities while employed by Defendant.

97. As a result of Plaintiff's protected opposition to discrimination, Defendant retaliated against her by subjecting her to less favorable terms and conditions of employment including,

but not limited to: adverse treatment, denial of an accommodation, placement on probation, and termination.

98. Defendant's actions were unlawful, intentional, willful, and done in reckless disregard of Plaintiff's legal rights as protected by the CADA.

99. Defendant's conduct as described herein constituted discriminatory or unfair employment practices in violation of Colo. Rev. Stat. § 24-34-402(1)(a).

100. As a direct, proximate and foreseeable result of the Defendant's intentional actions in this regard, the Plaintiff suffered damages, including lost wages and benefits.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for a judgment to be entered in her favor and against Defendant, and Order the following relief:

   a. Back pay, benefits, and other economic losses;

   b. Front pay, in lieu of reinstatement;

   c. Compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life, as allowed;

   d. Injunctive and/or declaratory relief;

   e. Relevant statutory damages;

   f. Pre-judgment and post-judgment interest at the highest lawful rate;

   g. Attorney fees and costs of this action, including expert witness fees, as available by law; and,

   h. Any such further relief allowable by law or as justice requires.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable in the instant action.

Respectfully submitted on June 18, 2019.

                                    BRYAN E. KUHN, COUNSELOR AT LAW, P.C.

*Original pleading bearing original signature maintained in the offices of Bryan E. Kuhn, Counselor at Law, P.C.*

s/ *Kate W. Beckman*
Kate W. Beckman, Esq. #42416
1660 Lincoln Street, Suite 2330
Denver, Colorado 80264
(p) (303) 424-4286 (f) (303) 425-4013
Kate.Beckman@beklegal.com
ATTORNEYS FOR PLAINTIFF